IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| ANTONIO RADFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | |
| | ) | |
| CITY OF WARNER ROBINS, GA, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |

## COMPLAINT

COMES NOW Antonio Radford ("Radford" or "Plaintiff"), Plaintiff herein, and files this Complaint against the above-named Defendant, City of Warner Robins ("Warner Robins" or "Defendant"), for interfering with the rights afforded to him by the Americans with Disabilities Act of 1990, as amended ("the ADA"), as follows:

### I.   Jurisdiction and Venue

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a)(2).

2. Venue is proper in the Middle District of Georgia under 28 U.S.C. § 1391(b) because all or a substantial portion of the acts complained of occurred within the State of Georgia and the jurisdiction of this Court.

### II.   Parties

3. Plaintiff Antonio Radford resides in Warner Robins, Georgia and is a citizen of the United States. Radford was employed by Defendant in Warner Robins, Georgia (within this District). Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about March 30, 2025. The EEOC issued a Right to Sue notice to Plaintiff on April 16, 2025.

4. Defendant Warner Robins is a municipality located in the State of Georgia and is an "employer" as that term is defined under Title VII and related applicable case law. The City of Warner Robins operates from and maintains its main office at 700 Watson Boulevard, Warner Robins, Georgia 31095. Warner Robins was and is an "employer" within the meaning of the ADA. Warner Robins can be served with a summons and a copy of this Complaint through its mayor, LaRhonda Patrick, at 700 Watson Boulevard, Warner Robins, Georgia 31095.

### III.   Facts

5. Mr. Radford had hip surgery on November 27, 2023.

6. Radford was hired as a Heavy Equipment Operator by Warner Robins on or about August 13, 2024. As a Heavy Equipment Operator, Radford was "responsible for operating a wide variety of assigned construction equipment utilized in the construction, repair, and maintenance of city streets, right-of-ways, storm water drainage systems, retention basins, bridges, facilities, properties, and other sites under city obligation" and was required to have a valid CDL license.

7. During Radford's orientation, he disclosed his hip surgery to Warner Robins.

8. After passing a field test, Radford began working on August 19, 2024.

9. During the first few days of Radford's employment, he told his supervisor about his surgery and how walking on slopes with a weed eater was a challenge. Radford's supervisor responded that he may have chosen the wrong job. Radford then asked his supervisor when he would start doing the job he was hired to perform- using heavy equipment. He received no response.

10. The following week, Radford's supervisor asked him whether he was okay after the supervisor noticed Radford limping. Radford responded in the affirmative and asked whether he could be transferred to a different crew or department where his heavy equipment skills could be utilized.

11. On or about August 29, 2024, Radford was told that he would have a meeting with Alton Tucker, the Superintendent of Field Operations for the City of Warner Robins, Craig Clifton, the Director of Storm Water for the City of Warner Robins, Radford's supervisor (Keith), and two other Warner Robins employees.

12. During that meeting, Clifton asked Radford whether he had been cleared to work after his surgery. Radford responded that he had been unemployed at the time of his surgery, so he did not have a reason to be cleared for work after his surgery, but that he had completed all of his physical therapy and during his last

visit to the surgeon she had mentioned that Radford's surgery had healed up nicely. Clifton insisted that Radford go to his doctor, and immediately placed Radford on administrative leave.

13. Radford went to his surgeon's office on August 30, 2025, who recommended that Plaintiff remain out of work until on or about September 16, 2025.

14. Later in the day on August 30, Plaintiff was called by Mrs. Byer to come into Defendant's office. Plaintiff was asked about the meeting on August 29, and was told by Mr. Tucker that, if he had known about Plaintiff's hip surgery, "we would not be having this conversation. Mrs. Byer responded, "He should not have said that."

15. On September 4, 2024, Mr. Fennell asked Plaintiff if he would be interested in a Rodder Truck position since met the requirements of that position and was already employed by Defendant. Mr. Fennell than handed Plaintiff a print-out of the Rodder Truck position and asked Plaintiff to show the document to his primary physician to see if Plaintiff could perform the essential functions of that position.

16. On September 5, 2024, Plaintiff met with his primary physician. After that appointment, Plaintiff attempted to call Mr. Fennell, but Fennell was out of the office.

17. Mr. Fennell called Plaintiff on October 6, 2025, thanked Plaintiff for following up with his physician, and informed Plaintiff that Fennell would speak with Mrs. Byer about Plaintiff's restrictions.

18. On October 10, 2024, Plaintiff was released back to work with restrictions on his ability to kneel and climb ladders.

19. On October 11, 2024, Plaintiff called Mrs. Byer, who informed Plaintiff that she had received Plaintiff's email and would meet with Messrs. Tucker and Clifton.  Meanwhile, Plaintiff would remain on administrative leave.

20. On October 12, 2024, Plaintiff had a follow-up appointment with his surgeon, who recommended that Plaintiff return to work on light duty.  After that appointment, Plaintiff first emailed, and then called, Mrs. Byer.  Plaintiff was unable to contact Mrs. Byer.

21. On October 13, 2024, Plaintiff spoke with Nikki Galera, who instructed Plaintiff to email his work status report to her so she could forward that not to Mrs. Byer.  Plaintiff contacted Mrs. Byer later that day, who told Plaintiff that she had no control over Plaintiff's return-to-work status, but she would pass along Plaintiff's information to Mrs. Byer.

22. Later on October 13, Plaintiff called Mrs. Byer about his follow-up appointment and his ability to return to work with light duty restrictions.  Mrs. Byer informed Plaintiff that she was aware of the situation and, pursuant to Warner

Robins policy, there was not light duty available and Plaintiff would remain on administrative leave.

23. On October 14, 2024, Plaintiff called Mrs. Byer, who told Plaintiff that, because he still had medical restrictions, he would have to sit tight until further notice.

24. On October 18, 2024, Plaintiff called Nikki Galera and asked if there had been any update. Ms. Galera again informed Plaintiff that he would have to speak with Mrs. Byer about the situation. Ms. Galera provided Plaintiff with Mr. Fennell's number.

25. Plaintiff then called Mr. Fennell, who was out of the office. Plaintiff left a voice message, but received no return call.

26. On October 21, 2024, Plaintiff called Mrs. Byer, but she was not in the office.

27. On January 29, 2025, Mrs. Byer called Plaintiff and instructed him to come to Warner Robins' Human Resources office on January 30, 2025.

28. On January 30, 2025, Plaintiff met with Mrs. Byer and a supervisor. Plaintiff was asked if he had gone to the doctor and had his restrictions removed. Plaintiff responded in the negative, and was immediately handed a separation notice. Plaintiff asked whether there was any job he could perform, or any job

Warner Robins would be willing to let him perform with his physical limitations, to which Mrs. Byer responded, "Unfortunately, no."

## IV.   CLAIMS

### COUNT ONE- Discrimination on the basis of disability in violation of the Americans with Disabilities Act, as amended

29.    Plaintiff has a disability which limits a number of major life activities. Plaintiff provided his medical limitations to Defendant.

30.    Defendant was aware of Plaintiff's medical condition and restrictions and knew that Plaintiff was disabled.

31.    To comply with the "reasonable accommodation" requirement of the ADA (set forth in 42 U.S.C. § 12112(b)(5)(A)), Defendant was required to engage in an interactive dialogue with Radford upon recognizing or believing that Radford's disability may be having a negative impact on his ability to adequately perform the essential functions of his job.

32.    Defendant neither provided Plaintiff with a reasonable accommodation to allow him to continue his duties as a Heavy Equipment Operator pursuant to his medical restrictions nor engaged in any interactive dialogue with Plaintiff regarding any reasonable accommodation that could be made to assist Plaintiff to work as a mechanic with his disability, in violation of the ADA.

33. Instead of engaging in an interactive discussion to determine what accommodation(s) could be made to help Plaintiff continue working as a Heavy Equipment Operator, Defendant terminated Plaintiff.

34. The reasons provided by Defendant for the adverse employment action termination taken against Plaintiff were pretextual in nature when compared to Defendant's treatment of their non-disabled employees.

35. Defendant is liable to Radford for compensatory and punitive damages, as well as attorney's fees and other costs of litigation, for its discrimination against/termination of Radford after he requested an accommodation for his disability.

## V.    Prayer For Relief

WHEREFORE, the named Plaintiff prays for the following relief:

A. Damages for lost wages and benefits and prejudgment interest thereon;

B. Liquidated damages for lost wages and benefits and prejudgment interest thereon;

C. Damages for mental and emotional suffering caused by Defendant's misconduct;

D. Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

E. That Plaintiff be awarded reasonable attorneys' fees pursuant to the FMLA, ADA, and any other applicable statute, including, but not limited to O.C.G.A. §§ 13-6-11 and 9-15-14;

F. That Plaintiff be awarded the costs and expenses of this action; and

G. That Plaintiff be awarded such other, further legal and equitable relief, including but not limited to, any injunctive and/or declaratory relief to which she may be entitled.

## VI.   Conclusion

WHEREFORE Plaintiff respectfully requests a **trial by jury** on all of Plaintiff's claims which are so triable, and that judgment be entered in Plaintiff's favor and against Defendant on all counts set forth above.


Respectfully submitted this 1st day of July, 2025.

*Tyler B. Kaspers*
Tyler B. Kaspers, Ga. Bar No. 445708
THE KASPERS FIRM, LLC
152 New Street, Suite 109
Macon, GA  31201
404-994-3128
tyler@kaspersfirm.com

Counsel for Plaintiff
